UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CAMERON THOMSON,

                Plaintiff,

v.

SAMANTHA PETERSON,

                Defendant.

_____/

Case Number 24-11761
Honorable David M. Lawson
United States District Judge

### OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Cameron Thomson and his wife, owners of lakefront property on an inland lake in Northern Michigan, engaged a contractor to install a seawall along the shoreline. They applied for but never obtained the required permit before installing the structure. Defendant Samantha Peterson, an employee of the Michigan Department of Environment, Great Lakes, and Energy (EGLE) with whom Thomson was communicating about the permit application, inspected the property, saw the newly built seawall, took photos, and notified Thomson that she was referring him for a violation investigation. Thomson brought the present case for damages and other relief against Peterson in her official and individual capacities, arguing that the inspection violated the Fourth Amendment and that Peterson committed a trespass when she entered his property to see what was there to be seen. Peterson moved for summary judgment, and the Court heard oral argument on June 9, 2026. Based on the record, Peterson is entitled to qualified immunity on the individual claim against her, the official capacity claim is barred by the Eleventh Amendment, and the Court declines to exercise supplemental jurisdiction over the state law trespass claim. The motion for summary judgment will be granted.

I.

The basic facts of the case are straightforward, and the parties do not dispute them in any material way.  Plaintiff Cameron Thomson and his wife own a lakefront property on Long Lake, an inland lake located in Hale, Michigan.  In 2022, Thomson sought to install a seawall on the shoreline of his property to reduce soil erosion from the water.  He retained D&C Landscaping (D&C), an independent contractor, to undertake the project.

Because the proposed seawall would contact the lakebed, Thomson was required to obtain a permit.  *See* Mich. Comp. Laws § 324.30102 (codifying Part 301 of the Michigan Natural Resources and Environmental Protection Act (NREPA), which requires a permit before "a person" may "dredge or fill bottomland," or "[c]onstruct, enlarge, extend, remove, or place a structure on" the bottomlands of an inland lake).  D&C's owner, Thomas Kangas, conveyed this requirement to Thomson and told him that he would need to furnish project-plan documents to support the application; Kangas would apply for the permit.  According to Thomson, Kangas did not explain the contents of the permit application.

Thomson nevertheless sent Kangas an email that allowed him to "pull a sea wall permit in [Thomson's] name."  ECF No. 37-4, PageID.804.  Consistent with that email, Kangas submitted the permit application to EGLE through an online portal in August 2022.  Kangas applied in his own name, recording that he was not the property owner and uploading Thomson's written approval for him to obtain the permit.

The permit portal required Kangas to accept several conditions before submitting the application.  One of the conditions authorized EGLE and its agents to enter the property before, during, and after completion of the project to conduct site inspections.  *See* ECF Nos. 36-2, PageID.724 (including the specific condition with Kangas testifying that it would not "surprise

him" if he agreed to it because "[t]hat's kind of what's going to happen" in the "process of a permit"); 36-3, PageID.750 (outlining application materials with the defendant testifying that the portal document that Kangas completed contained the inspection condition and that Kangas agreed to it). Although Kangas testified that Thomson knew about this condition, ECF No. 36-2, PageID.732, Thomson swore that he was unaware of it and never authorized Kangas to agree to it, ECF No. 36-1, PageID.707, 710-12. According to Thomson, he only allowed D&C and its employees to enter the property — no one else. *Id.* at PageID.706-07.

The permit process did not go smoothly. Defendant Samantha Peterson, the EGLE employee assigned to the matter, requested that Kangas make several rounds of revisions to the application. Despite those revisions, in early February 2023, Peterson informed Thomson that EGLE could not approve the permit application, explaining that Thomson's seawall project required modifications. She suggested alternatives. Thomson informed Peterson that D&C would nonetheless proceed with the seawall installation project. Soon thereafter, Thomson requested an extension for his permit application. In April 2023, Peterson attempted to arrange a visit to Thomson's property to further assess the seawall project proposal. Thomson did not respond.

As it turns out, the lack of a permit proved no obstacle to Thomson. Over several days in April 2023, D&C constructed the seawall without a permit at his direction. Thomson even assisted with some aspects of the installation. Moreover, each day, Thomson was at the property and "accepted [D&C] in" with its equipment. ECF No. 36-2, PageID.721. And although Kangas stated that he did not ask for permission to enter the premises each workday, Thomson testified that he required Kangas to seek permission by notifying him the day before if D&C would be working the next day.

Shortly after installation, Peterson sent Thomson a follow-up email on May 3, 2023, again attempting to arrange an on-site visit with him.  The next day, Thomson responded that "[w]e're going to address it again in spring 2024."  ECF No. 11-1, PageID.246.  Peterson advised him that EGLE could not leave the application pending for that long and asked whether Thomson would like to withdraw it.  Like before, Thomson did not respond.

Then, on May 19, 2023, after receiving no further communication from Thomson, Peterson inspected the property.  Relying exclusively on the permit condition concerning inspections that Kangas certified, Peterson entered the property without a warrant.  There, she observed the freshly built seawall on Thomson's shoreline.  Peterson gathered information, photographed the site, and otherwise generated evidence during the inspection that EGLE retained for its files.  Following that inspection, Peterson sent Thomson a letter denying his permit application and escalated the permit-less installation for further investigation.

On July 9, 2024, Thomson filed suit against Peterson in both her official and individual capacities, seeking declaratory, injunctive, and monetary relief.  He superseded that with an amended complaint, which asserts two claims.  Count I alleges a claim under 42 U.S.C. § 1983, alleging that Peterson's May 19, 2023 inspection constituted an unreasonable warrantless search in violation of the Fourth Amendment.  Count II asserts a state-law claim for trespass under Michigan law, alleging that the defendant unlawfully entered the property during the inspection.

Peterson filed a motion to dismiss the amended complaint and attached an affidavit, application documents, and correspondence to her motion to support her position.  At Thomson's request, the Court converted the motion into a motion for summary judgment and ordered briefing upon completion of discovery.

II.

The parties agree on the procedural framework.  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  When reviewing the motion record, "[t]he court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  *Alexander v. CareSource*, 576 F.3d 551, 557-58 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).  "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).

The party bringing the summary judgment motion must inform the court of the basis for its motion and identify portions of the record that demonstrate that no material facts are genuinely in dispute.  *Alexander*, 576 F.3d at 558 (citing *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002)).  "Once that occurs, the party opposing the motion then may not 'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion."  *Ibid.*  (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)).

Peterson insists that she neither trespassed on Thomson's property nor violated the Fourth Amendment with her inspection because the plaintiff, through Thomas Kangas, consented to allow her to enter the property to perform the inspection.  She mentions in her reply brief for the first time that the area inspected was not within the curtilage of Thomson's property, so no unlawful search could have occurred.  And she also contends that there is no case that clearly establishes that a Fourth Amendment violation can result from an inspection that flows from a permit

- 5 -

application that contains a consent provision like this one, and therefore she is protected by qualified immunity.  Lastly, she argues that the official capacity claims are barred by the Eleventh Amendment.

Thomson's response focuses on whether the facts show that he consented to allow EGLE agents to enter and inspect his property.  He says that he gave no valid consent.  Instead, he insists that any consent obtained through the permitting regime fails because Kangas and D&C, not he, were required to get the permit under the statute.  He cites no authority for this proposition.  He also argues that he only authorized Kangas to pull a permit for the project, not to consent to warrantless inspections of his property.  Because he did not expressly authorize Kangas to consent to inspections and was unaware of the inspection condition for permits, Thomson argues, the consent provided to the defendant in the permit application was not unequivocal, specific, or intelligently given.  And he says that the record does not support a finding that Kangas had actual or apparent authority as a contractor to provide third-party consent.  As for the official capacity claims, Thomson concedes that he does not seek damages, only declaratory and injunctive relief, so the exception to Eleventh Amendment immunity set out in *Ex parte Young*, 209 U.S. 123 (1908), saves those claims.

### A.

Turning first to the individual capacity federal claim, Peterson's argument is presented in the context of a qualified immunity defense.  It is well established that qualified immunity insulates state actors from liability so long "as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Once the qualified immunity defense is raised, Thomson "must show that (1) the defendant violated a constitutional right and (2) that right was clearly established" at the

time of the incident, that is, on May 19, 2023. *McDonald v. Flake*, 814 F.3d 804, 812 (6th Cir. 2016) (citing *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 680 (6th Cir. 2013)); *Aaron v. King*, 171 F.4th 822, 826 (6th Cir. 2026).

1.

Thomson argues that Peterson violated his right to be free from unreasonable searches, which is guaranteed by the Fourth Amendment. ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."). It is well understood that the Fourth Amendment bars government officials from unreasonably searching a person's home. *Mockeridge v. Harvey*, 149 F.4th 826, 833 (6th Cir. 2025). That prohibition extends to a home's "curtilage," which "is 'the land immediately surrounding and associated with the home'" and "'considered part of [the] home itself for Fourth Amendment purposes.'" *Id.* at 834 (quoting *Oliver v. United States*, 466 U.S. 170, 180 (1984)). To determine whether officials violate that command, courts conduct a two-part analysis. *Id.* at 833. First, a court must determine whether a search occurred at all. *Ibid.* (citing *Taylor v. City of Saginaw*, 922 F.3d 328, 332 (6th Cir. 2019)). Second, if a search occurred, a court must evaluate whether it was unreasonable. *Ibid.*

a.

The record facts support Thomson's contention that Peterson searched his property. A government official searches a property when she "invades an area in which 'a person has a constitutionally protected reasonable expectation of privacy,' or when [she] trespasses upon a constitutionally protected area." *Taylor*, 922 F.3d at 332 (quoting *Katz v. United States*, 389 U.S. 347, 360 (1967) (Harlan, J., concurring), and citing *United States v. Jones*, 565 U.S. 400, 404-05 (2012)). "It requires 'an attempt to find something or to obtain information.'" *Kanuszewski v.*

*Michigan Dep't of Health & Hum. Servs.*, 141 F.4th 796, 808 (6th Cir. 2025) (quoting *Jones*, 565 U.S. 408 n.5).  Entering onto a person's curtilage to obtain information "regarding compliance with . . . regulations," constitutes a search under the Fourth Amendment.  *Mockeridge*, 149 F.4th at 834-35.

Peterson's belated argument that she did not search the plaintiff's constitutionally protected curtilage does not hold up.  In general, arguments raised for the first time in a reply are forfeited as untimely.  *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008).  Peterson did not contend in her opening brief that the seawall lay outside the plaintiff's constitutionally protected curtilage because it was located below the ordinary high-water mark and therefore subject to public use.  To the contrary, her earlier briefing proceeded on the assumption that a search had occurred.  Moreover, "the failure to take up this issue will not result in a miscarriage of justice because [Peterson] had ample opportunity to raise the issue" in her earlier-filed briefs.  *Ibid*.  Having withheld the argument until her reply, she deprived Thomson of a fair opportunity to respond.  Therefore, Peterson forfeited this argument.

Moreover, the argument is unpersuasive.  Peterson's deposition testimony confirms that, regardless of whether the seawall was within the curtilage, she entered the other areas of Thomson's property that immediately surround his home — *i.e.*, the property's curtilage — to gather information for the permit application and its regulatory requirements.  *See, e.g.*, ECF No. 36-3, PageID.742-45.  Because she entered the curtilage to obtain information regarding Thomson's regulatory compliance, her entry constitutes a search under the Fourth Amendment.  *Mockeridge*, 149 F.4th at 834-35.

b.

The search was conducted without a warrant, and so its reasonableness immediately is called into question.  Warrantless searches, those "conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment." *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (citation modified).  As a result, "warrantless searches . . . violate the Fourth Amendment unless a recognized exception to the warrant requirement applies."  *Bambach v. Moegle*, 92 F.4th 615, 628 (6th Cir. 2024).  The government official "bears the burden of demonstrating an exception."  *Taylor*, 922 F.3d at 334.

One such exception is a search conducted with valid consent.  *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973); *Rockwood Auto Parts, Inc. v. Monroe Cnty.*, 155 F.4th 557, 566 (6th Cir. 2025).  To establish valid consent, an official must show that the consent was voluntary. *United States v. Alexander*, 954 F.3d 910, 918 (6th Cir. 2020) (citing *United States v. Canipe*, 569 F.3d 597, 602 (6th Cir. 2009)).  Consent "may be given not only by the defendant but also by 'a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected.'"  *United States v. Morgan*, 435 F.3d 660, 663 (6th Cir. 2006) (quoting *United States v. Matlock*, 415 U.S. 164, 171 (1974)).

Two questions, therefore, present themselves within that framework.  First, did Thomson himself consent to allow the inspections?  Second, if not, did Kangas validly grant third-party consent to the inspections?

Thomson devotes considerable space to the argument that he was not a regulated person under Part 301 because he was not the contractor — D&C was — and he did not apply for the permit that contained the consent language.  That bears on the first question, but it is a minor point in the totality of circumstances.  In fact, Peterson conceded in her deposition that Thomson himself

never directly gave unequivocal, specific, and intelligent consent to EGLE to the search.  ECF No. 36-3, PageID.745.  It is the second question that determines the validity of the search.

There is no question that Kangas gave unequivocal, voluntary, and knowing consent to inspect the property by checking the acknowledgment box and submitting the permit application. And the facts establish without question that Kangas was Thomson's hired contractor, which suggests that an agency relationship existed.  But the Fourth Amendment inquiry is not resolved by showing only that an agency relationship existed.  The ultimate question is whether the third party possessed authority over the premises sufficient to justify consent to entry.  *Matlock*, 415 U.S. at 171 (asking whether the third party "*possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected*" (emphasis added)).  An agency relationship is relevant, in that it *can* confer authority over property and, in some circumstances, provide the basis for valid third-party consent.  *See Rockwood Auto Parts, Inc.*, 155 F.4th at 566; *Farinacci v. City of Garfield Heights*, 461 F. App'x 447, 451-52 (6th Cir. 2012).  But that is not enough.  Instead, the defendant must offer evidence establishing that Thomson delegated to Kangas authority within the agency relationship — expressly or by clear implication — to admit regulators onto the property.  *See Farinacci*, 461 F. App'x at 451-52 (holding that an express term that delegated a third party the power to admit other parties onto the property conferred actual authority over the premises for Fourth Amendment purposes).

A third party's voluntary consent to a search is valid when he possesses "'actual' or 'apparent' authority over the property."  *United States v. Sheckles*, 996 F.3d 330, 346 (6th Cir. 2021) (citing *Illinois v. Rodriguez*, 497 U.S. 177, 188-89 (1990)).

i.

A third party possesses actual authority when the property owner expressly, or by clear implication, delegates authority to admit regulators onto the property. *Rockwood Auto Parts, Inc.*, 155 F.4th at 566 (explaining that a property owner's authorized agents possess actual authority to consent to searches); *see also Farinacci*, 461 F. App'x at 451-52. Actual authority may also arise from common authority over the premises — that is, from mutual use coupled with "'joint access or control for most purposes,'" such that it is reasonable to recognize that the third party "'has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the [property] to be searched.'" *United States v. Purcell*, 526 F.3d 953, 962 (6th Cir. 2008) (quoting *Matlock*, 415 U.S. at 171 n.7).

Peterson has not established that Kangas possessed actual authority to consent to the inspection of Thomson's property. Kangas testified that Thomson knew of the inspection condition when he authorized Kangas to obtain the permit, but that fact is disputed: Thomson testified otherwise. For the defendant's motion for summary judgment, the Court must view the evidence in the light most favorable to the plaintiff. *Alford v. Deffendoll*, 165 F.4th 490, 496 (6th Cir. 2026).

On that view of the facts, Thomson authorized Kangas to secure a permit for the seawall project and to submit the materials necessary to obtain it. But that limited delegation does not, by itself, establish that Thomson authorized Kangas to consent to warrantless inspections of the property. *Cf. Farinacci*, 461 F. App'x at 451-52. Nor does the record compel a contrary conclusion. The inspection condition was neither prescribed by statute nor outlined in the permit application itself. Rather, it appeared only within the online permitting portal. Absent an explanation from Kangas, a property owner reviewing the governing statutes or the permit application would have no reason to know that obtaining the permit required consent to on-site

- 11 -

inspections, although common sense would suggest otherwise. But here, the Court cannot charge Thomson with that level of sensibility. Therefore, a reasonable jury could conclude that Thomson never delegated authority over the property that would allow Kangas to agree to that condition on his behalf.

In addition, Kangas lacked common authority over the plaintiff's property: he did not share joint access or control over the property for most purposes. Thomson hired Kangas to complete a discrete, week-long task at a specific location on the property. Such confined, short-term occupations of a property to perform work do not establish common authority. *United States v. Jones*, 335 F.3d 527, 531 (6th Cir. 2003) (holding that a handyman on the property to perform specific tasks did not possess actual authority to consent to a search and positing that generally, a "worker who is present on a more limited basis would not [have] authority to permit entry"); *cf. Rockwood Auto Parts, Inc.*, 155 F.4th at 568 (holding that a son of the property owner's decade-long employment relationship and a significant management role conferred common authority); *Ayoub*, 498 F.3d at 542-43 (holding that the "long-term caretaker of the" property and daughter of the property owner possessed common authority).

The remaining evidence points in the same direction. Thomson testified that Kangas was required to notify him before coming onto the property, and Kangas testified that Thomson would admit him, his employees, and their equipment onto the premises each day while Thomson remained present during the work. Thomson further testified that Kangas was authorized to allow only his employees onto the property. Those restrictions are difficult to reconcile with the notion that Kangas possessed "joint access or control for most purposes." *Purcell*, 526 F.3d at 962. Instead, they suggest that Kangas's authority over the property was carefully cabined.

Peterson pushes back, relying on *Nat'l Eng'g & Contracting Co. v. OSHA*, 928 F.2d 762 (6th Cir. 1991), for the proposition that contractors hold common authority over the job sites on which they work. But her reliance on this case is misdirected, as it did not announce a broad rule that contractors possess common authority over every worksite on which they perform services. Its holding was considerably narrower.

In *Nat'l Eng'g & Contracting Co.*, the U.S. Army Corps of Engineers contracted with several construction companies to complete a multi-year flood-control project. *Id.* at 764. After an accident at the site, OSHA sought to conduct a safety inspection. *Id.* at 764-65. Although one contractor objected, OSHA obtained the Corps' consent to inspect. *Id.* at 765. The Sixth Circuit upheld the search because the "Corps, as the contractor of a multi-employer construction site, possessed common authority over . . . the premises or effects sought to be inspected." *Ibid.* (citation modified). The court's holding therefore rested on the Corps' role as the entity overseeing and controlling a multi-employer job site that was jointly occupied and used by the various contractors. A later Sixth Circuit decision understood *Nat'l Eng'g & Contracting Co.* to stand for the more modest proposition that a site owner's consent is effective notwithstanding the objection of an occupying contractor. *See Cleveland Const., Inc. v. OSHA*, 201 F.3d 440, *4 (6th Cir. 1999) (table).

There are other reasons why *Nat'l Eng'g & Contracting Co.* does not fit the present facts. The property here was a private residence, not a sprawling, multi-year construction project involving numerous employers and one contractor exercising ongoing control over the premises. The plaintiff here hired a single contractor to perform a discrete task for a limited period. As explained above, the evidence would permit a reasonable jury to find that the plaintiff retained control over access to and use of the property. Nor is the relationship between the parties analogous

- 13 -

to the one in *Nat'l Eng'g & Contracting Co.* There, the consenting entity occupied the superior position, having engaged the objecting contractor to perform work at the site. Here, the arrangement runs in the opposite direction: the property owner hired the purported consenting party. *Nat'l Eng'g & Contracting Co.*, therefore, does not compel the conclusion that Kangas possessed common authority to admit government officials onto Thomson's property.

Kangas did not have actual authority to consent to the inspection.

ii.

Nor does the record support Peterson's argument that Kangas possessed the apparent authority to consent to the inspection as a matter of law. A third party's consent is valid when the facts available to the state official would warrant a reasonable belief that the third party had "joint access or control for most purposes," even if that belief later proves mistaken. *United States v. Penney*, 576 F.3d 297, 307 (6th Cir. 2009) (citing *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990)). The inquiry focuses on the totality of the circumstances known to the official. *United States v. Hudson*, 405 F.3d 425, 442 (6th Cir. 2005). However, the rule has an important limitation: when circumstances create ambiguity regarding a third party's authority over the premises, officers must take reasonable steps to resolve that ambiguity before proceeding with a warrantless search. *Purcell*, 526 F.3d at 963.

That principle forecloses reliance on Kangas's consent at the summary judgment stage. True, Kangas signed a permit application that contained unequivocal consent language. But he was hired to perform a discrete, short-term project, not to exercise joint access or control over Thomson's property for most purposes, and nothing that would have been available to Peterson at the time of the search would suggest that Kangas's authority extended beyond that. Thomson's permit-authorization email could support a reasonable belief that Kangas was authorized to obtain

- 14 -

permits and satisfy the requirements attendant to that task. But that authorization could be construed as ambiguous as to the time and manner of inspections. For example, the authorization did not expressly permit officials to enter the property during the project or empower Kangas to admit regulators, unlike authorization letters that courts have found facially sufficient. *See, e.g.*, *United States v. Kimber*, 395 F. App'x 237, 245 (6th Cir. 2010). And it would have been unlikely that Kangas would have had authority after the fact to allow an inspection that would have uncovered an illegal seawall installation. Perhaps Peterson entertained doubts about that authority herself, as she tried several times to arrange site visits directly with Thomson. There is no question, however, that she made no effort to clarify the extent of Kangas's authority. Under *Purcell*, she cannot rely on that unresolved uncertainty to justify the search.

* * * * *

Because a reasonable jury could find that Kangas lacked actual or apparent authority over the property to provide third-party consent, the defendant has not established valid consent to justify her search. The record therefore supports the plaintiff's argument that the warrantless inspection of the property was unreasonable, and his rights under the Fourth Amendment were violated.

2.

But that right was not clearly established at the time of the inspection in May 2023. A right is clearly established only when "every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (cleaned up). The doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). The burden of showing that a right was clearly established rests with the plaintiff. *DeVooght v. City of Warren*, 157 F.4th 893, 903 (6th Cir. 2025).

- 15 -

To carry that burden, a plaintiff must identify existing law that places the official's conduct "beyond debate." *Finley*, 102 F.4th at 808 (cleaned up). In most cases, that requires a published decision from the Supreme Court or the Sixth Court addressing materially similar circumstances and making clear that the challenged conduct was unlawful. *Bell v. City of Southfield*, 37 F.4th 362, 367 (6th Cir. 2022).

Thomson has not carried that burden. He contends that, taken together, *United States v. Jones*, 335 F.3d 527 (6th Cir. 2003), and *United States v. Waller*, 426 F.3d 838 (6th Cir. 2005), clearly establish that a short-term worker who provides third-party consent, *Jones*, 335 F.3d at 531, under ambiguous circumstances cannot justify a warrantless search without further inquiry, *Waller*, 426 F.3d at 846. But melding two principles from two separate cases to demonstrate that the defendant's conduct was unlawful does not fulfill his duty to identify a sufficiently analogous Sixth Circuit or Supreme Court decision. *See Bell*, 37 F.4th at 367.

Moreover, both decisions are missing a feature central to this case: a written authorization, albeit ambiguous in scope, empowering an agent to enter a regulatory permitting process on the principal's behalf. In *Jones*, a handyman admitted officers into a home despite the homeowners' prior objection. 335 F.3d at 531. Nothing in *Jones* suggested that the homeowners had authorized the handyman to consent to inspections or otherwise act for them in that respect. Here, by contrast, the property owner executed a written authorization permitting Kangas to obtain the necessary permit, which rendered the apparent authority question a close one. *Waller* does not provide any greater clarity. There, an apartment owner consented to a search of the apartment, and officers extended that consent to a co-occupant's luggage. 426 F.3d at 846. Because it was uncertain whether the owner exercised common authority over the luggage, the court held that the officers were required to clarify the scope of that authority before proceeding. *Id.* at 846-49. The

ambiguity in *Waller*, however, concerned control over a piece of personal property.  It did not involve an agency relationship, much less one defined in part by a written authorization connected to a particular regulatory task affecting the property.

Neither case that Thomson cites places the unlawfulness of the defendant's conduct "beyond debate." *Finley*, 102 F.4th at 808 (cleaned up).  Peterson therefore is entitled to qualified immunity on Thomson's Fourth Amendment unlawful-search claim.  The Court will grant summary judgment of dismissal on the federal individual capacity claim in Count I of the amended complaint.

B.

A suit against a state official sued in her individual capacity is tantamount to a suit against the state itself, and therefore sovereign immunity conferred by the Eleventh Amendment applies. *Boler v. Earley*, 865 F.3d 391, 409-10 (6th Cir. 2017) (citing *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005)).  "Under the Eleventh Amendment, states generally have sovereign immunity from suit in federal court." *Enbridge Energy, LP v. Whitmer*, 135 F.4th 467, 473 (6th Cir. 2025) (citing *Va. Off. for Prot. & Advoc. v. Stewart* (VOPA), 563 U.S. 247, 253-54 (2011)). "Unless immunity is removed, individuals cannot seek 'monetary damages or retrospective relief.'" *Stanley v. W. Michigan Univ.*, 105 F.4th 856, 863 (6th Cir. 2024) (quoting *Ashford v. Univ. of Mich.*, 89 F.4th 960, 969 (6th Cir. 2024)).

The Eleventh Amendment applies here because Peterson is an employee of EGLE, and therefore the plaintiff's official-capacity claims are claims against the State of Michigan.  *See Kanuszewski v. Michigan Dep't of Health & Hum. Servs.*, 927 F.3d 396, 413 (6th Cir. 2019); *see also Satkowiak v. Marshall*, 771 F. Supp. 3d 937, 944 (E.D. Mich. 2025).  Michigan has not waived its sovereign immunity, and Congress has not abrogated that immunity for § 1983 actions, *Quern*

*v. Jordan*, 440 U.S. 332, 341 (1979), or for supplemental state-law claims asserted against a State, *Raygor v. Regents of the University of Minnesota*, 534 U.S. 533, 540-42 (2002).

There are certain exceptions to the Eleventh Amendment immunity doctrine. One is where a state official is sued by a plaintiff seeking exclusively prospective injunctive relief for future violations of constitutional rights. *Id.* at 410 (citing *Ex parte Young*, 209 U.S. 123 (1908)). "To determine if *Ex Parte Young* applies, [the Court] 'need only conduct a "straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."'" *Id.* at 412 (quoting *Dubuc v. Mich. Bd. of Law Exam'rs*, 342 F.3d 610, 616 (6th Cir. 2003)) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

The *Ex parte Young* exception does not save Thomson's official-capacity claims because he has not established an ongoing unlawful search under the Fourth Amendment. Thomson contends that EGLE's continued retention of the photographs and information obtained during the inspection satisfies that requirement. But, as this Court recently explained in *Satkowiak v. Marshall*, --- F. Supp. 3d ---, No. 24-11229, 2026 WL 1244665 (E.D. Mich. May 6, 2026), the continued possession of that material, if unlawful at all, amounts to a seizure rather than a search under the Fourth Amendment. Any injunction directed at that conduct would therefore remedy a completed constitutional violation, not prevent a future one. *Satkowiak*, --- F. Supp. 3d ---, --, 2026 WL 1244665, *2. Thomson's request for a return of photographs taken during the inspection amounts to a plea for retrospective — not prospective — relief. Therefore, he has not identified an ongoing unlawful search sufficient to bring this case within the narrow *Ex parte Young* exception.

Because the *Ex parte Young* exception is inapplicable, the Eleventh Amendment bars the plaintiff's official-capacity claims. The Court will grant summary judgment and dismiss the official-capacity claims in Count I of the amended complaint without prejudice for want of subject matter jurisdiction over them.

C.

Thomson's trespass claim in Count II of the amended complaint is based on state law. Federal courts have supplemental jurisdiction over state claims if they are "so related to" the federal claims over which the court has original jurisdiction "that they form part of the same case or controversy." 28 U.S.C. § 1367(a). Here, the Court has subject matter jurisdiction under 28 U.S.C. § 1331 over Thomson's federal claims stated in Count I of the amended complaint. His trespass claim under Michigan law is related to the federal claims because it arises from the same factual circumstances. Nonetheless, section 1367(c) confers discretion upon district courts to decline supplemental jurisdiction over state law claims if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). In exercising this discretion, courts are to consider several factors, including whether declining jurisdiction would lead to wasteful proceedings due to the overlap between state and federal law, whether it would cause unfairness to a party, whether it would undermine federal-state comity, and whether a party has manipulated the case to reach the federal forum. *See Gamel v. City of Cincinnati*, 625 F.3d 949, 951-52 (6th Cir. 2010).

Here, the plaintiff's only federal claims will be dismissed. The Sixth Circuit has stated repeatedly that "[i]f the federal claims are dismissed before trial, the state claims generally should be dismissed as well." *Brooks v. Rothe*, 577 F.3d 701, 709 (6th Cir. 2009) (citations omitted). A dismissal of federal claims under Rule 12(b)(6) creates a "strong presumption" in favor of

- 19 -

dismissal of state-law claims, which may be overcome only in "unusual circumstances." *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1255 (6th Cir. 1996).  No such circumstances are present here.  Therefore, the Court will dismiss the plaintiff's remaining state law trespass claim without prejudice.

III.

Although the record does not establish as a matter of law that the defendant's warrantless inspection of the plaintiff's permitless seawall installation was proper under the Fourth Amendment, the defendant is entitled to qualified immunity for the federal claim against her in her individual capacity.  The Eleventh Amendment bars the plaintiff's official-capacity claim brought under the Fourth Amendment.  The Court declines to exercise supplemental jurisdiction over the state law claim in Count II of the amended complaint.

Accordingly, it is **ORDERED** that the defendant's motion for summary judgment (ECF No. 11) is **GRANTED**.

It is further **ORDERED** that Count I of the amended complaint pleading an individual capacity claim under 42 U.S.C. § 1983 is **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that Count I of the amended complaint pleading an official capacity claim under 42 U.S.C. § 1983, and Count II of the amended complaint are **DISMISSED WITHOUT PREJUDICE**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   July 15, 2026

- 20 -